[No. 25424. Department Two. June 18, 1935.]

JOHN ANDERSON *et al., Respondents,* v. THOMAS H. WHEELER *et al., Appellants.*[1]

[1]Reported in 46 P. (2d) 726.

 ██

*D. V. Morthland* and *Randall & Danskin,* for appellants.

*Hugo F. Luhman* and *I. J. Bounds,* for respondents.

MITCHELL, J.—This cause of action, by John Anderson and wife against Thomas H. Wheeler and wife, arose out of a collision between their automobiles at the intersection of south First street and south Second street, in the city of Yakima. South First street runs southeasterly and northwesterly and is an arterial highway, and south Second street, not an arterial highway, runs south into, but not across, south First street. The junction of the two streets produces a triangular area wider, of course, across the north of it.

Anderson was driving his automobile northwesterly along the arterial highway. Wheeler, driving his automobile, was traveling south along south Second street. Going south on south Second street, there is a "stop button" sign on the right of that street, just before reaching the arterial highway. Plaintiff John Anderson was severely and permanently injured and his automobile damaged in the accident.

The trial of the case resulted in a verdict for the plaintiffs. Defendants have appealed from a judgment on the verdict.

The issues in the case consisted of allegations of negligence against the defendants, and of contributory negligence against the plaintiffs, each of which was denied. Upon the first, there was abundant evidence that appellant Thomas H. Wheeler, though aware of the fact that he was approaching, and intended to enter, an arterial highway, and knew of the caution sign to stop, continued without checking the speed of

his car at all, and "cut the corner," that is, ran practically a straight course going to the left of the middle of south Second street extended southerly through the triangular intersection, getting over on his left side of the highway, which side at that time was properly occupied by the respondent going in the opposite direction, and, without checking the speed of his car, drove immediately toward respondent's car, causing the respondent, a moment before the impact, to slightly turn his car in an attempt to avoid a head-on collision.

Appellant Thomas H. Wheeler, in testifying, admitted negligence on his part, as follows:

"Q. Now, Tom, here's your deposition: 'Q. Did you stop? A. No. Q. Why didn't you stop? A. Well, I shifted my gears and I thought I could beat the other fellow over there.' Is that right? A. Yes. Q. You thought you could beat the Anderson car across the intersection, is that right? A. Yes. Q. You said yes? A. Yes. Q. You tried to beat him you say? A. Yes. Q. You gambled with him? A. Yes, I gambled with him."

This testimony was repeated by the appellant while testifying before the jury, and there was other testimony tending to establish negligence on the part of Wheeler.

As to the alleged contributory negligence on the part of Anderson, while there was some conflict in the testimony, much, or the greater portion of it, was in substance as testified to by one riding in respondent's car at the time of the accident, as follows:

"Q. Did you see a car coming down south Second? A. I did. Q. It turned out to be later what car? A. Tom Wheeler's car. Q. Did you see the car coming towards you? A. Yes, sir. Q. Did the Wheeler car stop at the stop sign? A. It did not. Q. Did it appear to slacken in speed any way? A. It did not. Q. As it passed the stop sign, what direction did it take in relation to the car you were riding in? A. I was

watching it all the time and it seemed to come right straight for us. Q. Were you at any time to the left of the center of First street before the impact? A. No, sir. Q. Always to the right of the center? A. Yes, sir. . . . Q. You mean he came right straight toward you? A. Yes. Q. What did the Anderson car do as the Wheeler car came close to it? A. About the moment of the impact he seemed to swerve to the left to avoid the collision. Q. What happened? A. We were struck, then I was knocked out and I don't know what happened after that. Q. Did Mr. Anderson or you say anything just before the impact? A. Yes, he said, 'My God, he's coming through, hold on,' or something. Q. He came through? A. Yes, sir. Q. How fast do you think in your judgment was the Wheeler car going at the time you were hit? A. Mr. Wheeler, how fast he was coming? Q. Yes. A. I would judge he was coming about as fast as we were. Q. About how fast were you going? A. About twenty or twenty-five miles."

Notwithstanding assignments of error to the contrary on the part of the appellants, the questions of negligence and of contributory negligence were for the jury, and further, the jury were justified in the necessary finding, indicated by their verdict, that the negligence of the appellant Thomas H. Wheeler was the proximate cause of the accident.

Error is assigned upon the giving of an instruction with respect to the duty of a disfavored driver to yield the right of way being intensified rather than diminished by the fact of excessive speed of the favored driver. It appears that the appellant had testified the respondent, the favored driver, drove into the intersection at an excessive rate of speed. The instruction complained of follows the rule announced in *Saad v. Langworthy,* 153 Wash. 598, 280 Pac. 74, as follows:

"The duty to yield would be rather intensified than diminished by the fact that the car traveling in the

favored direction is seen traveling at an excessive and illegal rate of speed. *Kinney v. King,* 47 Cal. App. 390.''

Error is assigned upon the giving of an instruction submitting, in general terms, the question of sudden emergency as bearing upon one's conduct with reference to the rule of ordinary care. There was enough in the case, as to the facts, in our opinion, to submit that question to the jury. The terms of the instruction complained of, considered with other instructions that were given, appear to be correct. *Luther v. Pacific Fruit & Produce Co.,* 143 Wash. 308, 255 Pac. 365; *Stiles v. Corbett,* 136 Wash. 670, 241 Pac. 294; *Simonson v. Huff,* 124 Wash. 549, 215 Pac. 49; *Noyes v. Katsuno,* 111 Wash. 529, 191 Pac. 419.

Lastly, it is claimed the verdict was excessive. Anderson was very seriously injured in many respects, and, according to a great deal of what appears to be most reliable testimony, was injured to the extent of fifty per cent permanent disability. It is needless, in our opinion, to discuss in detail the great many injuries he received, and the consequent pain, suffering and expense caused thereby, that continued to the date of the trial, which occurred months after the accident happened. This feature of the case occupied much time at the trial, and we find nothing in the amount of the verdict, considered alone or with all the rest of the testimony and conduct of the trial, to indicate passion or prejudice on the part of the jury. The verdict is well sustained by the proof.

Judgment affirmed.

MAIN, HOLCOMB, STEINERT, and BLAKE, JJ., concur.